1
2
3
4
5
6

### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE, WASHINGTON

7
8
9
10
11
12
13
14
15

| | |
|---|---|
| ROBERT MURDOCK and KIMBERLY MURDOCK, <br><br> Plaintiffs, <br><br> v. <br><br> HOLLAND AMERICA LINE INC., a Washington Corporation, HOLLAND AMERICA LINE N.V., a Curacao Corporation, and HAL ANTILLEN N.V., a Curacao Corporation, <br><br> Defendants. | NO. <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY TRIAL DEMANDED** |

16
17
18
19

COMES NOW the Plaintiffs, ROBERT MURDOCK and KIMBERLY MURDOCK, by and through their attorneys, and for causes of action against Defendants allege as follows:

### I.      JURISDICTION AND VENUE

20
21
22
23
24
25
26

1.1    This action is brought by two cruise-ship passengers who sustained injuries—some physical, some mental—on a voyage on the *MS Nieuw Amsterdam* (the "Vessel"), on a seven-night eastern Caribbean cruise that departed Fort Lauderdale, Florida, on October 23, 2024. This action falls within the court's admiralty jurisdiction because the accident out of which this action arises occurred on a ship sailing in navigable waters, while the ship was engaged in an activity bearing a substantial relationship to traditional maritime activity. This action also falls within the court's diversity-of-

COMPLAINT - 1

**Anderson & Mitchell, PLLC**
16824 44th Ave. W, Suite 170
Lynnwood, WA 98037
Phone: (206) 436-8490
Fax: (206) 436-8491

citizenship jurisdiction because the Plaintiffs are citizens of Pennsylvania and the Defendants are citizens of and/or have their principal place of business in the state of Washington, and the amount in controversy exceeds $75,000. Under Rule 9(h)(1) of the Federal Rules of Civil Procedure, the Plaintiffs designate this claim as one brought at law under the court's diversity-of-citizenship jurisdiction.

1.2     Venue is proper in this court under 28 U.S.C. § 1391 because Defendant Holland America Line Inc. has its principal place of business in Seattle, Washington. Venue is also proper under the forum-selection clause of the Defendants' passenger contract.

## II.   PARTIES

2.1     The Plaintiffs, Robert Murdock and Kimberly Murdock, husband and wife, are residents of Leechburg, Pennsylvania, and were fare-paying passengers on the Defendants' Vessel.

2.2     Defendant Holland America Line Inc. is a Washington corporation with its principal place of business in Seattle, Washington. At all material times, Holland America Line Inc. was the operator of the Vessel and the agent of Defendants Holland America Line N.V. and HAL Antillen N.V.

2.3     Defendant Holland America Line N.V. is a Curaçao corporation with its principal place of business in Seattle, Washington. At all material times, Holland America Line N.V. was the charterer of the Vessel.

2.4     Defendant HAL Antillen N.V. is a Curaçao corporation and at all material times was the owner of the Vessel.

## III.  FACTUAL BACKGROUND

3.1     On October 21, 2023, Plaintiffs Robert and Kimberly Murdock and other passengers

COMPLAINT - 2

boarded the Vessel in Fort Lauderdale, Florida, for what was supposed to be a seven-night eastern Caribbean cruise. But because of engine problems, the Vessel's departure was delayed for two days, and the Vessel did not depart Fort Lauderdale until October 23, 2023.

3.2     On October 24, 2023, the Vessel called at the port of Nassau, in the Bahamas. The Murdocks disembarked and spent a couple of hours strolling around Nassau, and returned to the ship for lunch in the early afternoon.

3.3     While the Vessel's passengers were touring Nassau, the ship's crew were busy preparing the ship's various restaurants for lunch. One of the dining areas the crew prepared that morning was the popular outdoor seating section on the Vessel's 9th floor sea-view deck, but that morning the crew jammed too many tables, chairs, and umbrellas into that area, leaving little room for passengers to get in and out.

3.4     Upon returning to the ship, the Murdocks went to have lunch on the sea-view deck. As the Murdocks wound their way through the crammed tables and chairs, Robert Murdock, age 64, caught his foot on a hidden metal support projecting unseen from underneath a table, and he fell. Because he had no room to fall gracefully—in a way that might cushion the impact—he fell very awkwardly, knocking down tables as he fell.

3.5     Robert began to experience great pain in the thighs of both legs, just above his knees. (Not until several days later—in a Pennsylvania hospital—would he learn that he had dislocated his right knee, and severely ruptured muscles and tendons in and around the quadriceps muscles of both legs, leaving him totally unable to walk, and in need of emergency surgery.)

3.6     Crewmembers quickly arrived with a stretcher, and rushed Robert down to the ship's infirmary, accompanied by Kimberly Murdock.

COMPLAINT - 3

3.7     At the infirmary, the ship's doctor—"Dr. Erika"—advised the Murdocks that all that was needed was to pop Robert's dislocated right knee back into place. But before that was done—because Robert was in great pain—the doctor decided to inject him with a strong painkiller, which the Murdocks later learned was Ketamine, an hallucinogen. Then the doctor briskly ushered Kimberly Murdock out of the infirmary, telling her that "only one patient at a time" could be present in the infirmary, and telling her she would call her shortly at her cabin. Stunned at being separated from her incapacitated husband, Kimberly returned to her cabin and waited by the phone.

3.8     Ater what seemed an eternity but was probably less than thirty minutes, the phone rang. It was Dr. Erika telling Kimberly to return to the infirmary right away, and "bring Robert's passport and a credit card."

3.9     Minutes later, Kimberly Murdock arrived at the infirmary with the passport and a credit card. The infirmary was in chaos. Two or three phones were ringing, with Dr. Erika rushing to answer all of them. The ship's captain was calling, upset—telling the doctor that the ship needed to depart Nassau immediately—Robert Murdock's accident was causing an unacceptable delay! The doctor turned to Kimberly and told her that she had not been able to pop Robert's knee into place, and that Robert needed to go to a hospital in Nassau immediately. The doctor was back on the phone, summoning an ambulance. Kimberly tried to explain to Robert what was happening but Robert seemed to be hallucinating, and was incapable of communicating.

3.10    Crewmembers arrived to hurry Robert off the ship. Kimberly stood next to Robert's stretcher, intending to accompany him to the hospital, of course, when Dr. Erika told her she would not be allowed to leave the ship with Robert "because of immigration." Kimberly protested, and Dr. Erika assured her that Holland America would fly Robert back to the ship the next day when the ship

COMPLAINT - 4

stopped in the Turks and Caicos Islands. The moment Robert was whisked off the ship into the waiting ambulance, the ship's engines shuddered into action and the ship pushed away from the dock, while Kimberly Murdock returned to her cabin—stunned—and worried sick.

3.11    The word that best describes Robert Murdock's next eighteen hours at the Nassau hospital is *Kafkaesque*. The ambulance driver who wheeled Robert into the hospital whispered to Robert, just before leaving, "You should get out of this place as soon as you can—it's dangerous; people die here." And for the next eighteen hours, Robert was left on his stretcher in a dim hallway crowded with injured people—some bleeding, some vomiting and urinating in the hallway—all waiting for someone to come help them. Robert could not move, so as the hours passed and he needed to urinate, he asked a stranger to get him a bedpan. When a doctor finally saw him, after a sleepless night in the overcrowded, noisy hallway, the doctor placed Robert's right knee in a makeshift cast and told him he should go back to the United States and seek treatment there.

3.12    Robert took the doctor's advice, and got someone to assist him out to the street where he caught a taxi to the Nassau airport, then caught a flight to North Carolina, then another flight home to Pennsylvania where an ambulance took him straight to the nearest hospital for emergency surgery on both legs. (Robert could not walk or support his own weight, and he fell down in the street outside the Nassau hospital as he tried to get into the taxi; he fell flat on the pavement again while getting out of the taxi at the Nassau airport.)

3.13    Meanwhile, on the *MS Nieuw Amsterdam*, Kimberly Murdock was experiencing her own nightmare, for she was not able to reach Robert because Robert's phone battery was dead. And the ship's medical center had no information about Robert's whereabouts or his condition. But Dr. Erika did leave Kimberly with one bit of "advice": she told her to "prepare for amputation"!

Anderson & Mitchell, PLLC
16824 44th Ave. W, Suite 170
Lynnwood, WA 98037
Phone: (206) 436-8490
Fax: (206) 436-8491

3.14    And nothing ever came of Dr. Erika's promise that Robert would be flown to meet the ship in the Turks and Caicos Islands the next day—Holland America made no such arrangements, and, in fact, the ship was not scheduled to visit the Turks and Caicos the next day. Dr. Erika had just been telling Kimberly Murdock what she thought Kimberly wanted to hear.

3.15    For the next several days—until the Vessel returned to Florida—Kimberly had no communication with Robert and no information from the ship as to Robert's condition or his whereabouts. Crewmembers went to her cabin to request that she sign some paperwork concerning Robert's shipboard medical care, and when she refused to sign anything, the crewmembers returned *several times* to pester her into signing, even resorting to taping menacing-looking messages to her door.

3.16    Kimberly Murdock has recurrent nightmares in which she is stuck on the ship without Robert, and without knowing whether his legs have been amputated. And sometimes in her nightmare, she is confined to a cell on the ship because of refusing to sign the papers the crew kept badgering her to sign.

3.17    Today, a little more than five months after the cruise, and after spending almost eight weeks in hospitals, Robert Murdock is happy to be back home in Pennsylvania with Kimberly, but his recovery remains a work in progress and his physical therapy continues.

## IV.

## CAUSE OF ACTION 1: NEGLIGENCE

### Plaintiff Robert Murdock

4.1    Plaintiff Robert Murdock adopts the allegations in all the preceding paragraphs of this Complaint.

Anderson & Mitchell, PLLC
16824 44th Ave. W, Suite 170
Lynnwood, WA 98037
Phone: (206) 436-8490
Fax: (206) 436-8491

4.2     The Defendants, as owners and operators of the Vessel, owed the Plaintiff a duty of reasonable care on this cruise. This duty includes the obligation to maintain the common areas of the ship, including the ninth floor's sea-view deck, in a way that minimizes safety hazards.

4.3     The Defendants—acting through their shipboard employees—breached their duty of care by cramming too many tables, chairs, and umbrellas onto the sea-view deck, and arranging them crammed together in a way that made it difficult and unsafe for passengers to navigate their way among the tables and chairs.

4.4     The Defendants' crewmembers who crammed the tables and chairs together this way knew or should have known—by the exercise of reasonable care and common sense—that furniture crammed too closely together creates a tripping hazard because when one is forced to weave one's way between densely packed furniture, it becomes very easy for one to catch one's foot on the furniture's legs, which one would be able to clearly see and avoid if the furniture were not so densely packed.

4.5     As a direct and proximate result of Defendants' negligence, Plaintiff Robert Murdock tripped and fell and suffered permanent injury, past and future pain and suffering, incurred medical bills and other monetary damages, and will incur additional medical bills and monetary damages in the future.

**CAUSE OF ACTION 2: INTENTIONAL**

**INFLICTION OF EMOTIONAL DISTRESS**

**Plaintiff Kimberly Murdock**

4.6     Plaintiff Kimberly Murdock adopts the allegations in all the preceding paragraphs of this Complaint.

4.7     The Defendants—through their employees—acted intentionally or recklessly in one or more

Anderson & Mitchell, PLLC
16824 44th Ave. W, Suite 170
Lynnwood, WA 98037
Phone: (206) 436-8490
Fax: (206) 436-8491

of the following ways:

(a) They placed their interest in keeping the ship on schedule above their interest in caring for their injured passenger Robert Murdock, and in doing so they rushed Murdock off the ship rather than care for him and risk disrupting the ship's schedule.

(b) They prevented Kimberly Murdock from accompanying her mentally and physically incapacitated husband to the hospital in Nassau because that would have involved further dealings with Bahamian immigration which would have further delayed the ship.

(c) To prevent Kimberly Murdock from leaving the ship, they falsely promised her that they would fly Robert Murdock back to the ship the very next day.

(d) Later, without knowing anything about Robert Murdock's condition, they told Kimberly Murdock to prepare herself for the probability that one or both of Robert's legs would be amputated.

(e) They did not even try to console Kimberly Murdock by helping to find out about Robert Murdock's condition or his whereabouts, leaving Kimberly trapped and alone on the ship for days without any word about her husband.

(f) They harassed Kimberly Murdock for the rest of the cruise—coming to her cabin daily to pester her into signing some papers that they said she *must* sign, regarding Robert Murdock's shipboard care.

4.8    Those actions of the Defendants' shipboard employees were outrageous, were beyond all bounds of decency, and amount to conduct that is utterly intolerable in a civilized community, all the more so because Kimberly Murdock was a virtual captive on their ship.

4.9    Those actions of the Defendants' shipboard employees caused Plaintiff Kimberly Murdock severe emotional distress, for which she seeks monetary damages.

COMPLAINT - 8

## V.   JURY DEMAND

5.1     The Plaintiffs demand a jury trial.

### PRAYER FOR RELIEF

The Plaintiffs request that judgment be entered against the Defendants as follows:

a.  Awarding Plaintiffs damages in amounts to be established at the time of trial.

b.  Awarding Plaintiffs' actual and reasonable attorneys' fees, litigation expenses, and costs incurred in this action to the extent provided by any applicable law, and

c.   Awarding Plaintiffs any additional or further relief that the court finds appropriate, equitable, or just.

DATED this 25th day of April, 2024.

ANDERSON & MITCHELL, pllc

By _____
Wayne Mitchell WSBA # 24347
Attorney for Plaintiffs

COMPLAINT - 9